May it please the Court. My name is Dean Webb. I represent Portfolio Investment, LLC, Stephen Nickledge and Marsha Nickledge. Your Honors, this appeal presents two significant threshold issues. One, the application of this Court's decision of United States v. Milibandvic as it applies to federal civil RICO, honest services, federal mail fraud, and federal wire fraud based claims. And number two, the scope of the term fiduciary under Milibandvic in the context of a fiduciary duty owed by certain co-conspirators but not owed by others. The defendants raised two primary objections to plaintiff's amended complaint and to this appeal. One, that plaintiffs have not sufficiently alleged the necessary requisite of standing to assert a RICO claim based on honest services, mail and wire fraud. And two, that... What's your theory of the scheme to defraud? If you could just briefly describe that to me. The scheme to defraud is to deprive the appellants of their right to receive the rendition of honest services from both the defendant tax attorneys as well as from the First Savings Bank. Excuse me, Your Honor. What's the loss? What's the concrete loss? You have to show some sort of concrete loss. With regard to loss, taking the allegations of the amended complaint as true for purposes of 12B6, the loss was the plaintiff's ability to secure the financing and financial relief that it endeavored to obtain through First Savings Bank as well as through the intervention of their lawyers, tax attorneys. I guess if you can be more specific, because you have to plead it with specificity, and right now you just said the honest services and then the money that was kind of owed to you, but it's still not clear to me exactly what honest services you're talking about and what money owed from what. You need to connect the dots for me. Yes, Your Honor. First, to address the point of fiduciary relationship or the term fiduciary under Mee-Levanovich, which the district court in its court order had found that Mee-Levanovich did not support plaintiff's claim because one, it was a federal criminal prosecution, and two, it did not involve a racketeering charge. We contend that the term fiduciary, as examined and interpreted by Mee-Levanovich, can apply in the instance here by virtue of the evolving and developing relationship that Portfolio and Nicklage established initially with John Mills, who was the principal owner and operator of Executive House, and subsequently that firm was acquired by First Savings Bank. Mr. Nicklage and Portfolio developed a relationship with Mr. Mills and his company over a period of approximately 35 years or so, one of trust and reliance, and Mr. Mills being respected and known for his experience in real estate financing, construction, and development. And Mr. Nick, Portfolio, and Nicklage have dealt with Mr. Mills and then subsequently with First Savings Bank while Mr. Mills was still in the employ of that firm on an informal type of basis, excuse me, that by virtue of having financed, refinanced, arranged for financing and construction of various types of real property projects over a period of 30 some odd years, that there was a level of reliance and trust that didn't necessarily require the parties to immediately reduce their understandings or their affirmations in a form of a document or a formal kind of document. But when Portfolio and Nicklage sought this financial support through First Savings Bank to save not only, to save approximately 30 pieces of real estate, it had submitted written documents to First Savings Bank as well as informed the bank that Portfolio had identified particular private investors that had agreed to provide certain amount of financing to assist in Portfolio's effort through the bank to work out, if you will, the relief that the plaintiff sought. What's the current status of the Chapter 11 bankruptcy and the foreclosure proceedings? The Chapter 11 cases were previously dismissed and the properties in question have been lost. On the 20th of January, 2010, Mr. Nicklage met in person with certain representatives of First Savings Bank at the Savings Bank office here in Renton to secure a commitment. And as a result of that meeting, which was not to plaintiff's satisfaction, within a week, the plaintiff received through Federal Express a one-page communication from tax attorneys, which is referenced in an excerpt of Record ER-76, and it was delivered by FedEx, which is referenced at ER-75, a one-page letter that basically stated that the law firm maintained and had a unique form of service and program that essentially guaranteed that the law firm could assist and provide, through its experience and its expertise, relief for the plaintiff to seek the financing that the plaintiff had been endeavoring to secure for some time. And that letter states, in part, that no attorney's fees would be paid by the plaintiff, that the bank would pay the attorney's fees, and that upon receipt and review of that communique, Mr. Nicklage reviewed it with his wife, immediately called and spoke with attorneys at the law firm, subsequently made an appointment to meet with that firm. At the initial meeting at that time is when the attorneys of tax attorneys affirmed and represented to the plaintiff that it had a, quote, confidential insight and, quote, a contact person that the firm Now, what evidence in the record supported that statement, other than that? Other than the allegation within the complaint. Was there any evidence presented that there was a contact that the firm had with the lender? No, just the allegation, as what the plaintiffs were told by these lawyers. If you were granted leave to amend, what would you add, you know, in terms? You filed a 459-page complaint alleging 56 claims. I mean, the RICO's the one we're focused on, but what would you add to correct the complaint? To address the deficiencies, Your Honor, would be to substantiate the factual allegations regarding the nature of what I characterize as a security of the interrelationships amongst tax attorneys with First Savings Bank Northwest, with Executive House, with John Mills, and John Mills' Greenwood Capital One LLC. Based on the allegations of this complaint, that there appears to be an informal, mutually recognized, acceptable relationship whereby the law firm receives, allegedly receives, the information, confidential information from First Savings Bank. That the law firm, in turn, would use to solicit a potential client for purposes of providing the representation to secure the financing. But in point and fact, what happened with Nicolage and Portfolio was just to the extreme end result. That is, rather than pursuing that route, tax attorneys advised, according to the allegations of the complaint, basically put the arm on the plaintiffs to file Emergency Chapter 11 cases on the eve of a noted trustee sale of one of the properties. The clients didn't seek out tax attorneys for representation in the bankruptcy court. They sought out the attorneys based upon their representations and affirmations of what they could deliver by virtue of their representation of this unique program or approach. Now, this unique program or approach that the attorneys presented and reaffirmed to the plaintiffs is not an isolated fact. But according to the allegations of the complaint, there were other individuals who confirmed to the plaintiffs and the law firm confirmed to the plaintiffs that they had told and made similar representations to other individuals as well. Yes. I'm sorry. Do you want to reserve the rest of your time? Oh. Now, I'm just asking, do you want to reserve the rest of your time? Yes, I would. Yes, Your Honor. Thank you. I'd like to reserve three minutes, if I may, please. Thank you. Good morning. May it please the Court. Robert Lowery presenting in joint defense for the lender-related Appley defendants. Those are all of the defendants in the case except for the lawyer defendants, Tax Attorneys Inc., Chang and Cicero, who are represented by Mr. Woodbury, who will also present this morning. I plan to take about ten minutes, Your Honor, so that you know that there are certain other lawyers here today representing some of the lender-related defendants. It's not anticipated that they will speak unless there's some question that is unanticipated that they would be best prepared to address. The district court properly dismissed and dismissed with prejudice these RICO claims, not simply because of the issues that were mentioned in plaintiff's comments a moment ago, but there were riddled, the complainants really riddled with deficiencies. They've had 459 pages and two pleadings, and there are numerous problems with the complaint beyond just simply the lack of concrete financial loss and the question of how they get facts for pleading a scheme to defraud, something that sounds in fraud. There's certainly the injury requirements are missing. There's no concrete financial loss. There's not a protected interest in business or property that is required for RICO standing. In civil RICO, that's a stiff standing requirement because that's what gives a private right of action for RICO. You have to be injured in your business or property, and that's why there's a threshold there. Mr. the plaintiff's counsel this morning in saying that they were injured financially because they didn't get loan relief doesn't make sense in terms of a concrete financial loss from any fraud. The fact that they were in financial distress and couldn't meet their existing loan obligations, and so they wanted loan concessions, they wanted the bank to take a loss, doesn't entitle them to getting any relief, and that's not a financial loss that they incurred. It's certainly not a concrete financial loss, and it's not a property interest that they had any right to. They had no contract right to it, and there's no other basis for them to have obtained a right to have financial relief that they requested. Now, there are other things, though, that are deficiencies about the complaint beyond standing, although proximate causation comes into play on standing as well. There's no RICO violation alleged. We don't see briber kickbacks here for mail-of-wire honest services fraud, and that's required under the Skilling case, and we don't see particulars of any fraud. We don't see how the circumstances of fraud are described, how that there's any sense of an intent to swindle or to in some way or another to defraud the plaintiffs so that the bank or, for that matter, tax attorneys are going to get money from them or property. There's no required pleading of mails and wires in order to have a crime of mail-of-wire fraud. One must show that there was use of the mails, that there was use of interstate wires, and the lender defendants aren't alleged to have mailed anything, at least specifically by fact. They're all alleged to resign, have offices in the state of Washington, and the plaintiffs live in Washington. So if there were wires, calls, or e-mails, those are taking place within state. They don't plead those. There's no pleading of where the intent is to defraud. There's no facts to support the four enterprises that they have, and two of them don't. They fail because they don't meet the enterprise person distinction under RICO, and we've briefed that elsewhere. So there are many bases that we have briefed in and argued both to the district court and to this court for why this claim is defective. And it really amounts to a futile situation after all these pages of pleading. The idea that, and with what we've heard so far this morning, which those comments about financial loss were really not contained in the brief, but be that as it may, as I've said, it doesn't meet the standard of financial loss. And in addition, they don't have any, in response to the question, Your Honor, of what additional facts would you plead, they never suggested that below. They never requested leave to amend. They're trying to come up with some facts now, but those facts don't suffice for all of these particulars in the way that the elements of RICO need to be pled. And so they've not suggested anything this morning that will get them over the hurdle. There are many hurdles here. Conduct of an enterprise through a pattern of racketeering activity, which requires at least two predicate acts, two criminal predicate acts. They've had this RICO claim standing. RICO claims are onerous. They've had this RICO claim standing, and it's not until today that they're coming forward and trying to say any facts, additional facts that they would plead. How do you read the pattern that's alleged in the complaint? As best you can figure out, what's the pattern? There is no pattern, because there's no RICO violation. You have to have at least two predicate acts. There is an allegation of fraud. There is a conclusory allegation of fraud. Under the Bell Atlantic v. Trombley case and Star v. Baca in this circuit, one must have plausible pleading of facts. You sweep away the conclusions. They're not entitled to have the conclusions accepted as true, but you sweep those away. Nothing is left. Do you know, and maybe this is a question for Mr. Woodbury, how the tax attorneys knew to solicit portfolio as a client in early, I think it was 2010, and what that confidential information referred to in the tax attorney's letter? I don't know what they were referring to, Your Honor. But what I can say is, and this comes also with the Bell, Sirriot-Bell and Iqbal cases, is that if there's an alternative explanation that makes sense, then you don't get into the plausible pleading category. And here, three weeks before that form letter was sent to the plaintiffs, there was a posting, a public posting of notice of default, and the foreclosure process began. That's all public information, and lawyers and, for that matter, other businesses that represent parties that are in that kind of financial distress have easy access to that information. So it seems like it's no mystery that they would perhaps have an understanding of not only the fact there had been a foreclosure, but who it was, and send a form letter. So what you're saying, it's one plausible inference that they were just following up on publicly available information, as many people in that position might have done. It's just as possible, more possible. It makes common sense. And to meet the plausible pleading standard from the plaintiff's point of view, you can't just put forth something that's possible. Trombley says, no, it's not just possible. It has to be something more than that to be plausible. And if there's an alternative explanation, then that explanation is, if you will, more acceptable for pleading purposes and doesn't get you over the hurdle. Do you want to let Mr. Woodburn come? Unless you have something else. Well, Your Honor, I would just conclude by saying, again, there are these many bases on which the district court properly exercises discretion to dismiss this case with prejudice, and we ask this court to affirm. Thank you. Thank you. Good morning, Your Honors. I'm John Woodbury. I represent the respondents, Tax Attorneys Inc., Susan Chang and Johnny Cicero II. Do you know the answer to my question? The question about how they found out? Yes. I don't really know the answer to that question. All I know is that there's been no basis shown in the record that there is a source that the appellants. How about the confidential information that's referred to in your client's letter? Well, this case was dismissed before it ever got to discovery. I have not delved into that. I've just been addressing the issues of the record. And my argument basically is this honest services fraud, which is intangible property, and the only possible basis for an injury claim under RICO in these facts, requires under Skilling an allegation of facts showing a bribe or kickback occurred. Now, what the plaintiff, the appellants, have admitted in their brief on page 14 and again on page 19 is that they realize they need to amend because they have not alleged a factual basis for standing. And they say, if you let us amend the complaint, then we can conduct discovery and find out who this mysterious confidential informant was. And maybe after discovering along the way, they just might find something that they think by now is a suspicion of a bribery or kickback. They would have to make a conclusionary allegation that it exists. Under Civil Rule 11, you're supposed to have facts that would sustain a basis for a pleading to allege them under the holdings in Twombly and Ashcroft. The Supreme Court has said that in order to survive a motion to dismiss, there must be enough facts alleged to nudge the matter past the line from mere possibility to plausibility. And we contend that alleging, telling this court that there is a basis for amending to ask for a way to prove facts that they don't know on the theory that that's the only way they can stay in the case is an overreach of their fishing expedition. As Mr. Lowery argued, there were other bases for arguing to sustain or affirm the district court's decision. And I won't address those because those were not raised in the appellant's brief. It's clear to the respondents that there's no basis for this case to go forward. The appellant argues in his brief that the judge denied his right to amend only because he didn't ask. And, of course, that's only part of what the judge said. He denied because he didn't ask, but also it would have been undue prejudice, expensive to having to defend, and that it was not feasible or not as a futility decision the judge made. And the authorities in the circuit have said that they're not required to give a reason, but if they do, then you can look to that. There's no reason to amend this complaint. They don't have these facts, Your Honors, and to allow this case to go forward on the speculation that they might be able to prove it. And counsel has, Mr. Lowery has presented, I think, a fair argument that there are other possible alternative theories as to what this supposed confidential information is based on. This letter was a good example of puffing, I think, but it didn't rise to the level of fraud. It didn't identify the elements of it that was fraudulent. They had to fall back on the honest services deprivation theory to try to find a predicate act. And if you look at the pattern, the question was asked about pattern. There was one letter here. How's their pattern with that? If the complaint just fails and allowing them to amend again would just be not proper use of the judicial system, we respectfully ask the court to affirm the decision of Judge Jones in this case. Thank you. Thank you, Your Honor. Mr. Webb. Thank you. In brief, to respond to a question of damages, you know, the Ninth Circuit in Diaz v. Gates, which is an en banc opinion, found the allegation by the plaintiff, who was a victim of the LAPD corruption scandal, a basis to allege damages even though the plaintiff, you know, suffered incarceration as a result of being unjustly charged, tried, convicted, and sentenced. The district court had dismissed the action, stating that plaintiff, you know, hadn't demonstrated an injury to his interest in business or property. And if anything, he just alleged a basis for false imprisonment for federal section 1983 claims. And his injuries were primarily personal. The Ninth Circuit reversed and remanded and found that the plaintiff, Mr. Diaz, had lost, in fact, an interest in property, so be it his employment. And reviewing California state law, employment constitutes a form of property. Also, the fact that Mr. Diaz lost his right to pursue prospective economic advantage. As long as Mr. Diaz was behind bars, incarcerated, obviously he was foreclosed from pursuing the right to, you know, seek reinstatement of his job or to seek a new job, a new position. With regard to tax attorneys, another point that we raised, I didn't cover it orally, but that the nature of the relationship tax attorneys had with another client of theirs, Metropolitan Group, owned by Justin Cicero, who is the son of John Cicero, the attorney of tax attorneys, that sought to have appellant's market, if you will, appellant's properties, buying through his company, have the listing signed in blank and, you know, to be sold at whatever price that the monies could, whatever price the market would bear. The appellants fiercely resisted this approach. At no time did tax attorneys or Susan Chang or John Cicero ever disclose the fact that the law firm also represented and advised Justin Cicero and his company. His company, Metropolitan, stood to gain commission. When First Savings Bank's officer, John Preston, had now followed up with plaintiff's investor, Mr. one of the private investors who had been in communication with Preston to arrange for the securing of $3 million to be applied toward a 50% workout, and then the clients filed for Chapter 11 to prevent the trustees from proceeding, Mr. Preston calls and speaks with the clients and said, you know, you didn't have to do that. We're ready to work with you. Have your attorneys call us. The appellants immediately call tax attorneys, say you need to call Preston. Tax attorney's response is, well, let's give it a while. Let's give it a week or so, and then let's see if he sends a letter. Well, this is inconsistent with the scope and the content of the letter as well as the verbal representations and confirmations made at the tax attorney's office about they could do all the – they could perform these, quote. I think we understand now your arguments. Thank you very much. And we list the pattern as far as the pattern of the commission of racketeering activity, and then I think importantly to your honor from the standpoint of – Sir, your time is up. Sorry. Thank you. We are – this matter is now submitted, and that concludes our docket up for today and this week, and so we are adjourned. Thank you very much.
judges: ALARCON, TASHIMA, MURGUIA